Marvin WITTLER, Appellant,

v.

Shirley S. CHATER, Commissioner of Social Security,* Appellee.

No. 94–2675.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 12, 1994.

Decided July 6, 1995.

---

4. Appellees' motion to dismiss the appeal is denied.

* Effective March 31, 1995, the functions of the Secretary of Health and Human Services in social security cases were transferred to the Commissioner of Social Security. P.L. No. 103–296. Pursuant to Fed.R.App.P. 43(c), Shirley S. Chater, Commissioner of Social Security, is substituted as the appellee in this action. Although we have substituted the Commissioner in the caption, in the text we continue to refer to the Secretary of Health and Human Services because she was the appropriate party at the time of the underlying decision.

Milo O. Alexander, Omaha, NE, argued, for appellant.

Paul W. Madgett, Omaha, NE, for appellee.

Before McMILLIAN, Circuit Judge, JOHN R. GIBSON, Senior Circuit Judge, and SHAW,** District Judge.

JOHN R. GIBSON, Senior Circuit Judge.

Marvin Wittler appeals the district court's order affirming the Secretary of the Department of Health and Human Services's determination that he was not entitled to continued disability benefits because he was participating in a vocational rehabilitation pro-

gram. Wittler argues that even though he is no longer disabled, he is entitled to continued benefits under section 301 of the Social Security Disability Amendments, Public Law 96–265, codified at 42 U.S.C. §§ 425(b) and 1383(a)(6).[1] The ALJ concluded that Wittler was not entitled to continued benefits under section 301 because Wittler was expected to recover before completing the program. The district court affirmed, and, on appeal, Wittler argues that the Secretary's interpretation of section 301 is contrary to its plain language and the Secretary's regulations. Wittler also argues that the section 301 determination is unsupported by substantial evidence on the record as a whole. We affirm.

Wittler began receiving disability benefits and supplemental security income benefits on June 7, 1986, after receiving a shotgun wound to his knee. On April 7, 1988, the Secretary notified Wittler that his disability had ceased in April 1988, and that he would receive his last benefit check in June 1988. Wittler pursued his administrative appeals, but both the ALJ and the Appeals Council upheld the denial of benefits. Wittler then filed an action in the United States District Court for the District of Nebraska. On July 31, 1990, the district court remanded Wittler's case to the Appeals Council, which, in turn, remanded the case to an ALJ for consideration of Wittler's claim that even though he was no longer disabled, he was entitled to continued benefits under section 301 because of his participation in an approved vocational rehabilitation program. The Social Security Administration advised Wittler that he was not entitled to continued benefits under section 301. Wittler appealed, the ALJ conducted a hearing, and also denied continued benefits under section 301. The ALJ recognized that section 301 provides for benefits even if Wittler is no longer disabled if: (1) he is participating in an approved vocational rehabilitation program under an approved state plan; and (2) the Commissioner determines that Wittler's completion of the vocational

---

** The HONORABLE CHARLES A. SHAW, United States District Judge for the Eastern District of Missouri, sitting by designation.

1. The parties refer to these statutes collectively as Section 301 because the statutes are identical,

section 425(b) applies to the Social Security or Title II disability program, and section 1383(a)(6) applies to the SSI or Title XVI disability program.

rehabilitation program will increase the likelihood that he may be permanently removed from the disability benefit rolls. The ALJ concluded that Wittler satisfied only the first condition, not the second. The ALJ reasoned that Wittler's completion of the program did not increase his likelihood of permanent removal from disability because he was reasonably expected to medically improve and, thus, be removed from the disability rolls before completing the vocational rehabilitation program. The ALJ looked at the legislative history of section 301, reasoning that Congress intended the provision to extend benefits only in "exceptional cases" when the disabled beneficiary unexpectedly recovers before the end of the rehabilitation program. The ALJ examined the record and concluded that when Wittler began the program he was expected to recover before the end of the program and, thus, his was not an exceptional case entitled to continued disability benefits under section 301.

The district court also affirmed the Secretary's decision denying continued benefits. Wittler appeals, arguing that the Secretary's interpretation of section 301 is contrary to the statute and its implementing regulations.

■■■■ The issue on appeal is a question of statutory interpretation, which we review de novo. *Crane v. Sullivan*, 993 F.2d 1335, 1336 (8th Cir.1993). "If a statute is 'silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.'" *Rust v. Sullivan*, 500 U.S. 173, 184, 111 S.Ct. 1759, 1767, 114 L.Ed.2d 233 (1991) (quoting *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984)). We will affirm the Secretary's interpretation "if it reflects a plausible construction of the plain language of the statute and does not

otherwise conflict with Congress' expressed intent." *Id.*

Section 301 provides that an individual is entitled to continued benefits even if his impairment is no longer disabling if:

(1) such individual is participating in an approved vocational rehabilitation program under a State plan approved under Title I of the Rehabilitation Act of 1973 [29 U.S.C. 720 et seq.], and

(2) the Commissioner of Social Security determines that the completion of such program, or its continuation for a specified period of time, will increase the likelihood that such individual may (following his participation in such program) be permanently removed from the disability benefit rolls.

42 U.S.C. § 425(b) (1988); similar provision at 42 U.S.C. § 1383(a)(6)(A) and (B) (1988).[2]

The legislative history of section 301 states:

The conference committee wishes to make clear that it expects that, in most cases, medical cessation of disability will result in the termination of benefits, as now occurs in all cases. The conferees are concerned that under present vocational rehabilitation procedures many individuals have been permitted to enter approved programs even when there is a reasonable expectation of medical recovery before the termination of the program. (This is demonstrated by the fact that an increasing number of individuals have been terminated from the benefit rolls while participating in a State approved vocational rehabilitation program who were at the time of enrollment in the program diaried for reexamination on the basis of the time-limited nature of their medical impairment). It is not the intent of this provision to continue benefits in these cases. It is the intent of the provision to consider only those exceptional cases where the disabled beneficiary is not expected at the beginning of

---

2. Amendments to the Social Security Act enacted in 1990 changed section 425(b) and section 1383(a)(6) to read "such individual is participating in a program of vocational rehabilitation services approved by the Secretary," and substituted "the Secretary" for "the Commissioner of Social Security." *See* 42 U.S.C. §§ 425(b) and 1383(a)(6)(A) and (B) (Supp. V. 1993). The So-

cial Security Independence and Program Improvements Act of 1994 substituted "the Commissioner of Social Security" for "the Secretary." Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103–296, § 201, 108 Stat. 1490 (1994). These amendments do not affect our analysis of Wittler's case.

the program to recover medically before the end of the program, but he or she does recover and is no longer considered disabled within the meaning of the Social Security Act, although some residual functional limitation still remains.

H.Conf.Rep. No. 944, 96th Cong., 2d Sess. 52, reprinted in 1980 U.S.C.C.A.N. 1392, 1400.

■ Relying on this legislative history, the Secretary concluded that Wittler was not entitled to continued benefits because he was expected to recover when he entered the rehabilitation program. Wittler contends that three courts have rejected this interpretation and that two of these courts refused to consider the statute's legislative history. *Leschniok v. Heckler,* 713 F.2d 520, 522–23 (9th Cir.1983); *Dion v. Heckler,* 582 F.Supp. 872, 874–75 (D.Mass.1984). The third court held that the legislative history of section 301 did not support the Secretary's position of denying continued benefits. *Paskel v. Heckler,* 768 F.2d 540, 545–46 (3d Cir.1985). Wittler argues that the Secretary's interpretation reads the word "permanently" out of section 301, and that the Secretary misapplied section 301 because she did not determine whether he had future job prospects, focusing instead on his expected recovery. He contends the Secretary's interpretation conflicts with the statute's directive to consider whether vocational rehabilitation will increase the likelihood of permanent removal from disability rolls.

The three cases cited by Wittler do not control. In those cases, the Secretary refused to consider the claimants for section 301 benefits. *Paskel,* 768 F.2d at 541; *Leschniok,* 713 F.2d at 521; *Dion,* 582 F.Supp. at 873. At that time, the Secretary's regulations provided, in part, that benefits would continue if "[a]t the time you began participating in the program, you were not expected to recover medically before the scheduled completion date." 20 C.F.R. §§ 416.1338(a) and 404.1586(f) (1985). Based on these regulations, the Secretary denied continued benefits for claimants participating in vocational rehabilitation programs who were expected to recover before completing the programs. *Paskel,* 768 F.2d at 541; *Leschniok,* 713 F.2d at 521; *Dion,* 582

F.Supp. at 874. In addition, the Secretary concluded that section 301 did not require a hearing to determine if the claimants were entitled to continued benefits unless the claimant was not expected to recover before the scheduled completion of the vocational rehabilitation program. *Paskel,* 768 F.2d at 541; *Leschniok,* 713 F.2d at 521; *Dion,* 582 F.Supp. at 874. The courts held that the Secretary could not limit a claimant's right to a section 301 hearing to persons who were not expected to recover before the completion of their vocational rehabilitation program. *Paskel,* 768 F.2d at 544–46; *Leschniok,* 713 F.2d at 521; *Dion,* 582 F.Supp. at 874. The courts ruled that the Secretary must give all claimants enrolled in vocational rehabilitation programs a section 301 determination hearing before terminating benefits. *Paskel,* 768 F.2d at 544–46; *Leschniok,* 713 F.2d at 522–23; *Dion,* 582 F.Supp. at 874–75. Wittler confuses his right to a hearing and his right to benefits. The cases Wittler relies upon did not decide that the claimants were entitled to continued benefits. The cases only say that a claimant is entitled to a hearing to determine whether the claimant can be expected to recover before completing the vocational rehabilitation program. Wittler received this hearing.

The Secretary's interpretation of section 301 reflects a reasonable interpretation of the statute and is supported by the legislative history. Section 301 calls for a determination that the completion of the program will increase the likelihood that the claimant will be removed from the disability benefit rolls. The Secretary conducted this determination and, so, complied with the statute.

Wittler argues that the Secretary's practice contradicts the regulations, which provide that "benefits ... may be continued" for claimants who meet the requirements and which do not exclude claimants expected to recover before completing their rehabilitation program. In 1986, the Secretary amended the regulations at issue. The regulations provide for continued benefits if "[w]e have determined that your completion of the program ... will significantly increase the likelihood that you will not have to return to the disability benefit rolls." 20 C.F.R.

§§ 404.1586(g)(iv) and 416.1338(a)(4) (1994). In amending the regulations, the Secretary eliminated the previous requirement that the claimant not be expected to recover. *See* 51 Fed.Reg. 17,616 (1986). The Secretary left in place the requirement that a determination be made of whether completion of the vocational rehabilitation program would increase the likelihood of a claimant's removal from the disability benefit rolls. *See* 20 C.F.R. § 404.1586(g)(iv) and 20 C.F.R. § 416.1338(a)(4). Having made this determination, the Secretary did not violate the regulations.

Finally, Wittler argues the Secretary's decision is unsupported by the evidence. We affirm the Secretary's decision if it is supported by substantial evidence on the record as a whole. *Culbertson v. Shalala,* 30 F.3d 934, 939 (8th Cir.1994). The ALJ determined that Wittler arguably began participating in an approved vocational rehabilitation program on August 10, 1987. The evidence in the record shows that Wittler applied for the program in August 1987, but did not officially enroll in the program until February 1988. Using either date, substantial evidence supports the ALJ's finding that, at the beginning of his vocational rehabilitation program, Wittler was expected to recover before completing the course work for an associates degree in computer programming in February 1991. Wittler's impairment was characterized in November 1986 as non-permanent, and was diaried for review in November 1987. In November 1986, a state medical consultant concluded that "medical improvement was expected," and, indeed, a review of Wittler's medical reports shows that Wittler's physical condition steadily improved. His knee injury resulted from a traumatic event, not a chronic condition and, thus, it was reasonable to conclude that he could eventually perform sedentary work. Finally, the Secretary determined in April 1988 that Wittler was no longer disabled. The Secretary made this determination soon after Wittler began working toward his associates degree and less than one year after applying for the program. For these reasons, we conclude that the Secretary's determination is supported by substantial evidence.

We affirm the judgment of the district court.