**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**


No. 05-0355


ANGEL VAZQUEZ-FLORES, APPELLANT,


V.


JAMES B. PEAKE, M.D.,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.


Before GREENE, *Chief Judge*, and KASOLD and HAGEL, *Judges*.

**O R D E R**

On February 21, 2008, the Secretary filed a motion to stay the precedential effect of the Court's decision in *Vazquez-Flores v. Peake*, __ Vet.App. __, No. 03-0355 (Jan. 30, 2008), "until final judicial resolution of the issues presented." Secretary's Motion (Mot.) at 1. The Secretary contends that the precedential effect of the decision should be stayed because (1) there is a strong likelihood of success of his pending motion for reconsideration, or in a subsequent appeal if that motion is denied, (2) VA would suffer irreparable harm in the absence of a stay, (3) the nonmoving party would not be adversely affected by a stay, and (4) the public interest favors granting the stay. Mr. Vazquez-Flores is opposed to the motion. For the reasons stated below, the motion will be denied.


I.  BACKGROUND


There is no dispute that 38 U.S.C. § 5103(a) requires the Secretary to notify claimants upon receipt of a complete or substantially complete claim, what, if any, information or evidence is necessary to substantiate the claim, and who should provide it. *See* U.S.C. § 5103(a); *Mayfield v. Nicholson*, 20 Vet.App. 537, 540 (2006). The underlying *Vazquez-Flores* decision defined the scope of the notice required by section 5103(a) when the claim is one for increased disability compensation. *See Vazquez-Flores*, __ Vet.App. at __, slip op. at 5-6. One aspect of the required notice forms the basis of the Secretary's requested stay and his related motions for reconsideration or en banc consideration. Specifically in contention is the requirement that when "the [diagnostic code (DC)] under which the claimant is rated contains criteria necessary for entitlement to a higher disability rating that would not be satisfied by the claimant demonstrating a noticeable worsening or increase in severity of the disability and the effect of that worsening . . . on the claimant's employment and daily life (such as a specific measurement or test result), the Secretary must provide at least general notice of that requirement to the claimant." *Id*. at __, slip op. at 6.

## II. ANALYSIS

As we held in *Ribaudo*, the Secretary, as the moving party herein, has the burden of demonstrating that a stay is warranted. *See Ribaudo v. Nicholson*, 21 Vet.App. 137, 140 (2007) (per curiam order). Although there are essentially four key factors for consideration, as laid out below, whether a stay is appropriate depends on the totality of the circumstances. *Id.* at 140-41. Although the Secretary addresses the appropriate criteria for evaluating whether a stay should be granted, his analysis is faulty, and the totality of the circumstances do not favor a stay in this instance.

### A. Likelihood of Success

The Secretary's argument that he has a strong likelihood of success on the merits on reconsideration or appeal is premised on a misunderstanding, indeed a misreading of the holding of *Vazquez-Flores*. Specifically, the Secretary asserts that providing notice in increased-compensation claims of criteria contained in the DCs, including specific information regarding diagnostic tests and measurements, would require him to make predecisional adjudications in order to ascertain the individualized notice required. However, nothing in *Vazquez-Flores* can or should be read to require any predecisional adjudication.

An increased disability compensation claim is one in which the underlying disability has been service connected and in which the disability has previously been evaluated under certain, discrete diagnostic codes assigned by the Secretary during the initial adjudication. *See Francisco v. Brown*, 7 Vet.App. 55, 58 (1994) (noting that in an increased-rating claim entitlement to compensation has already been established). Thus, the *Vazquez-Flores* requirement that the Secretary notify an increased-compensation claimant of the criteria necessary for a higher rating contained in a previously assigned or cross-referenced DC – when that criteria would not be satisfied by the claimant demonstrating that his disability generally has worsened or adversely affected his occupation and life[1] – does not necessitate an adjudication of the claim prior to providing notice.

Rather, what *Vazquez-Flores* requires is a review of the previously assigned DC and disability rating, and a common-sense assessment whether the criteria for a higher rating under the assigned or a cross-referenced DC includes criteria "that would not be satisfied by the claimant demonstrating a noticeable worsening or increase in severity of the disability and the effect of that worsening . . . on the claimant's employment and daily life (such as a specific measurement or test

---

[1] In all increased-compensation claims the claimant should be notified (1) to provide evidence that his disability has worsened and what impact that has had on his occupation and life, (2) that the disability rating would be based on application of the relevant DC to his condition, and (3) of examples of the types of medical and lay evidence that might be submitted. *See Vazquez-Flores*, __ Vet.App. at __, slip op. at 5-6. This generic notice requirement is not disputed.

2

result)." *See Vazquez-Flores*, __ Vet.App. at __, slip op. at 6.[2]  If it does, then general notice of that criteria must be provided to the claimant.

Indeed, in the absence of such notice, the claimant would be unaware that such evidence was crucial to being awarded a higher rating, a result wholly contrary to the stated purpose of section 5103(a).  *See Mayfield v. Nicholson*, 444 F.3d 1328, 1333 (Fed. Cir. 2006) ("The purpose of the statute and the corresponding regulation is to require that the VA provide affirmative notification to the claimant prior to the initial decision in the case as to the evidence that is needed and who shall be responsible for providing it."); 146 CONG. REC. S9212-13 (Sept. 25, 2000) (statement of Sen. Rockefeller) (notice is intended to ensure that claim is "developed properly the first time the veteran submits an application for benefits" such that it will "lead to expedited decision making and higher satisfaction in the process").  Moreover, the concept of individually tailored notice in limited situations is not new.  *See, e.g.*, *Dingess v. Nicholson*, 19 Vet.App. 473, 498 (2006) (holding that the "content of such notice must be defined by a reasonable and liberal reading of the application actually filed"); *Kent v. Nicholson*, 20 Vet.App. 1, 10 (2006) (holding that, for claims to reopen, notice must be provided as to "what evidence would be necessary to substantiate that element or elements … were found insufficient in the previous denial"); *Hupp v. Nicholson*, 21 Vet.App. 342, 352-53 (2007) (holding that, in dependency and indemnity compensation claims, compliant section 5103(a) notice "must be responsive to the particular application submitted").

Thus, in this instance, the Secretary's contention that he has to pre-adjudicate increased-compensation claims is without merit and fails to raise a "'serious, substantial, difficult and doubtful [issue, so] as to make [it] a fair ground for litigation and thus for more deliberate investigation,'" *see Ribaudo*, 21 Vet.App. at 141 (quoting *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir. 1953)), and his argument therefore has little likelihood of success.

---

[2]  In the underlying merits case, Mr. Vazquez-Flores was assigned a 30% disability rating for nephrolithiasis under DC 7508.  *See* 38 C.F.R. § 4.115b, DC 7508.  The Court noted that DC 7508 provides only a 30% disability rating but explicitly cross-referenced hydronephrosis (38 C.F.R. § 4.115b, DC 7509) as the applicable DC (except for recurrent stone formation requiring therapy or medical procedures).  Further, although DC 7509 also provides only a maximum 30% disability rating, it notes that severe hydronephrosis should be rated as renal dysfunction under 38 C.F.R. § 4.115a, which provides up to a 100% disability rating.  Thus, the only way Mr. Vazquez-Flores could be assigned a schedular rating higher than 30% is if his condition warranted a rating under § 4.115a.

Moreover, the underlying opinion notes that some of the criteria needed to support a higher disability rating under § 4.115a are beyond the obvious effects of one's worsening disability and its affect on occupation and life, such as the fact that hypertension rated at 40% warrants a 60% rating for renal dysfunction.  *Id*. at __, slip op. at 10-11. Because notice to submit evidence that one's nephrolithiasis had worsened or increased in severity and how it has affected one's occupation and life provides no notice with regard to the fact that a higher rating might be authorized for nephrolithiasis under § 4.115a, (e.g., a 60% rating is authorized for renal dysfunction with hypertension rated at 40%), the Court held that section 5103(a) requires that the Secretary notify Mr. Vazquez-Flores of the specific criteria necessary to be awarded the higher ratings.  *Id*.  This assessment requires nothing other than knowledge of the assigned DC and a review of the criteria for a higher schedular rating so that the veteran can be notified of the information and evidence necessary to substantiate his claim for increased compensation and participate in securing the correct award in the initial adjudication of his claim.  *See* 38 U.S.C. § 5103(a); *Mayfield v. Nicholson*, 444 F.3d 1328, 1333 (Fed. Cir. 2006); 146 CONG. REC. S9212-13.

## B. Irreparable Harm to the Secretary

The Secretary's contention that he will suffer irreparable harm is premised, in part, on his understanding that he will have to review what he asserts to be more than 140,000 cases that are now on appeal before the Board or in various stages of administrative appeal that might generate a significant administrative burden due to the number of remands that would be required. However, other than the asserted number of increased-compensation claims on appeal, the Secretary's contention is not supported by any evidence or convincing explanation. As noted above, the Secretary's concern that he has to pre-adjudicate all increased-compensation claims is without merit. Moreover, the *Vazquez-Flores* decision does not mandate remand by the Board during the administrative appellate process in every increased-compensation claim. Remand would only be required in those cases where the notice provided was inadequate and not otherwise shown to be non-prejudicial. *See Vazquez-Flores*, __ Vet.App. at __, slip op. at 8-10; *see also Medrano v. Nicholson*, 21 Vet.App. 165, 170-71 (2007) (Board is not prohibited from evaluating for harmless error, however, the Court gives no deference to any such evaluation, which is subject to the Court's de novo review).

Every case on appeal to the Board must be reviewed for compliance with the law, which includes, if presented by the record, compliance with notice requirements, *see* 38 U.S.C. § 7104(a) (decisions of the Board to be based, inter alia, on all "applicable provisions of law and regulation"), and remanded for error, unless the error is shown to be non-prejudicial, s*ee* 38 U.S.C. § 7261(b)(2) (Court shall "take due account of the rule of prejudicial error"); *Sanders v. Nicholson*, 487 F.3d 881, 891 (Fed. Cir. 2007) (VCAA notice error is presumed prejudicial); *see also Newhouse v. Nicholson*, 497 F.3d 1298, 1301 (Fed. Cir. 2007) (stating "that the Veterans Court was required to examine whether any errors by VA were prejudicial and that it must do so based on the administrative record"). *Compare Charles v. Principi*, 16 Vet.App. 370, 373-74 (2002) (Board should provide adequate statement of reasons or bases on findings with regard to notice), *with Overton*, 20 Vet.App. 427, 437 (2006) ("[A] discussion of the notice requirements of section 5103(a) and § 3.159(b) may not be required in every case."). Thus, the *Vazquez-Flores* decision added no additional burden with regard to the review that the Board is required to perform. Furthermore, there is no dispute with the general notice requirements laid out in *Vazquez-Flores* for all increased-compensation claims, and the Secretary presents no evidence with regard to the number of claims on appeal at the Board that might involve those few DCs that contain specific measurements or test results necessary for assignment of a higher rating, and for which generic notice is inadequate and not shown to be non-prejudicial.

The Secretary also states that there are 152,888 completed claims and 235,105 pending claims that "*may* involve a claim for increased compensation." Mot. at 7 (emphasis added). The Secretary's contention as to the number of claims that *Vazquez-Flores* might affect is speculative, and, as noted above, his concern that such claims would require burdensome pre-adjudication is unfounded. In claims for which notice has not yet been provided, the Secretary need only identify the assigned DC and cross-referenced DCs, review them for specific criteria for which the generic notice is insufficient, and add general notice of the evidence needed to satisfy that criteria to the notice he otherwise has to provide. For those claims for which notice has been provided, he need

4

only take corrective action if the regional office or the Board determines, in the normal processing of the claim, that the claimant was not provided notice of what evidence was needed to substantiate his claim. Given this, should the Secretary ultimately prevail on appeal, his intermittent "burden" of providing general notice of criteria needed to substantiate a claim for a higher schedular rating does not rise to the level of irreparable harm. *See Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484-85 (3d Cir. 2000) ("The irreparable harm requirement is met if a plaintiff demonstrates a significant risk that he or she will experience harm that cannot adequately be compensated after the fact by monetary damages.").

Furthermore, as noted above, the Secretary presents no evidence beyond his speculative assertions of how many increased-compensation claims may be affected by *Vasquez-Flores* or how many of those might involve a DC that contains a specific measurement or test result necessary for assignment of a higher rating, and for which the generic notice is inadequate and not shown to be non-prejudicial. In short, the Secretary's assertion that the denial of a stay will require "'a serious restructuring of the VA workforce'" is unsupported by any evidence, and to the extent it is based on the Secretary's assertion that our decision in *Vazquez-Flores* requires a predecisional adjudication to determine what notice is required, it is without merit. Mot. at 8 (quoting *Ribaudo*, 21 Vet.App. at 142). Thus the Secretary fails to demonstrate irreparable harm. *See Ribaudo*, 21 Vet.App. at 140 (moving party has the burden of demonstrating that a stay is warranted).

C.  Impact on Nonmoving Party

Although the Secretary correctly notes that his request for reconsideration serves to stay action on Mr. Vazquez-Flores' claim independent of his request to stay the precedential effect of *Vazquez-Flores*, *see* 38 U.S.C. § 7291; *Tobler v. Derwinski*, 2 Vet.App. 8, 13 (1991) (per curiam order) (noting the distinction between finality as to the parties in a case on appeal and the precedential effect of a Court decision), his argument that a stay of the precedential effect is inconsequential as to all other claimants seeking increased compensation is without merit.[3] Specifically, the Secretary argues that unlike *Ribaudo*, which involved "a rule of law that requires benefits to be awarded to a category of claimants," *Vazquez-Flores* involves the adequacy of pre-adjudicatory notice for increased-compensation claims and affects cases irrespective of whether an award would be warranted. However, this is a distinction without meaning in the context of the stay issue.

At the outset we note that the Secretary fails to explicitly state what action he will take with regard to the claims that he asserts are pending before the Board or in one of the various stages of administrative appeal, or what action he may take on newly filed claims for increased compensation. However, since he has not sought to stay processing of these claims, it must be presumed that he will process them. *See Tobler*, 2 Vet.App. at 14 (holding that decisions of the Court are binding when issued and are to be applied by the Secretary when adjudicating claims); *see also Ribaudo*, 21 Vet.App. at 140 (citing *Nat'l Org. of Veterans Advocates v. Sec'y of Veterans Affairs*, 260 F.3d 1365,

---

[3] *See Ribaudo*, 21 Vet.App. at 143 (impact on nonmoving party is "judged by the group that is defined by the law being interpreted").

1380 (Fed. Cir. 2001)) (noting the Court can authorize the Secretary to stay cases at the Board and agencies of original jurisdiction). Thus, if the precedential effect of *Vazquez-Flores* is stayed as the Secretary requests, he will process these claims without providing the notice required by *Vazquez-Flores*.

This has the likely effect of subjecting some number of veterans to denial of their claims by the agency of original jurisdiction or while on administrative appeal because the veterans were not notified what was needed to substantiate their claim and therefore they failed to provide the necessary information or evidence. In these instances, the failure to accord the right guaranteed to them by statute to participate in evidence gathering at the earliest stage of the adjudication impairs the essential fairness of the adjudication. Moreover, with regard to those claims where evidence supporting an award of increased benefits is otherwise available, a retroactive award of disability benefits is not a satisfactory remedy for the delay in awarding benefits in the first instance. *See Cervantez v. Sullivan*, 719 F. Supp. 899, 906 (E.D. Cal. 1989) (rejecting argument that retroactive payment of disability benefits remedied denial of claim later found to be improper), *rev'd on other grounds*, 963 F.2d 229 (9th Cir. 1992); *see also Schweiker v. Chilicky*, 487 U.S. 412, 428 (1988) (stating that a wrongful termination of benefits upon which a claimant "depend[s] for the very necessities of life cannot be fully remedied by the 'belated restoration of back benefits'"); *Leschniok v. Heckler*, 713 F.2d 520, 524 (9th Cir. 1983) ("We fail to comprehend the Secretary's argument that financial compensation at some future date, should the claimants survive and prevail, mitigates the hardship which is visited upon claimants and their families each and every day."). Simply stated, delaying disability compensation otherwise authorized by law has an adverse affect on a claimant. *See Ribaudo*, 21 Vet.App. at 143 (impact on nonmoving party is "judged by the group that is defined by the law being interpreted").

## D. Public Interest

The Secretary's argument that the public interest favors granting the requested stay is premised on his perceived need to engage in a "labor-intensive review of the hundreds of thousands of claims affected by *Vazquez-Flores*." Mot. at 10. However, as noted above, the Secretary fails to provide evidence in support of his assertion. Moreover, given his misreading of *Vazquez-Flores*, there is no public interest in granting a stay while he presents such an argument on reconsideration or appeal.

## E. Totality of Circumstances

As discussed above, none of the essential factors for consideration in whether a stay is warranted weigh in favor of the Secretary's request. Inasmuch as the totality of the circumstances do not support a stay, the request will be denied.

Upon consideration of the foregoing, it is

ORDERED that the Secretary's motion to stay the precedential effect of the Court's January 30, 2008, decision in *Vazquez-Flores* is DENIED.

6

DATED:          April 3, 2008                              PER CURIAM.